IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:24-mc-00033

| | |
|---|---|
| **IN RE MISSION HEALTH ANTIRUST LITIGATION** | **W.D.N.C. CIVIL ACTION NO.** No.: 1:22-cv-00114-MR-WCM |

## NON-PARTY MULTIPLAN'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, non-party MultiPlan, Inc. ("MultiPlan") respectfully submits this memorandum in opposition to the Motion to Compel filed by Defendants HCA Healthcare, Inc., HCA Management Services, L.P., HCA, Inc., MH Master Holdings, LLLP, MH Hospital Manager, LLC, MH Mission Hospital, LLLP (collectively, "HCA Defendants"), ANC Healthcare, Inc. and Mission Hospital, Inc. (collectively, "ANC Defendants," and together with the HCA Defendants, "Defendants").

I.  INTRODUCTION

Defendants issued third-party subpoenas to MultiPlan in connection with federal and state antitrust litigation relating to the Mission Hospital System. The pending antirust matters allege that Defendants use of anticompetitive contractual

arrangements resulted in the plaintiff-payors paying inflated prices for healthcare services. MultiPlan is not a party to either the federal or state court action and, as detailed below, is not a proper target of Defendants' overburdensome subpoenas.

Defendants' subpoenas seek extensive categories of information and communications relating to MultiPlan's confidential contracts and network arrangements with providers across the entire state of North Carolina, over a time period spanning over 8 years. Without doubt, Defendants' exceptionally broad requests will create an undue burden for MultiPlan.

Despite having conferred on the issue multiple times, Defendants insist that MultiPlan, which is not an insurance company, TPA, or healthcare payor, respond to the subpoenas simply because MultiPlan *may* possess relevant information, without regard to whether similar information either has been or could be recovered from other sources. Forcing MultiPlan to respond to Defendants' subpoenas would create a burden outweighing any benefit possibly gained from production and therefore, Defendants' motion should be denied. However, to the extent the Court is inclined to require production, MultiPlan requests that Defendants be ordered to bear the cost and expense of same.

## II.     BACKGROUND

Defendants issued subpoenas to MultiPlan in two suits concerning allegations of antitrust violations by the Mission Hospital System: one in *In Re Mission Health Antitrust Litigation*, 1:22-cv-00114-MR (W.D.N.C.) (the "Federal Court Action"), and one in *William Alan Davis, et al. v. HCS Healthcare, Inc. et al.*, No. 21-CVS-3276, pending in the General Court of Justice, Superior Court Division, Buncombe County (the "State Court Action"). In both cases, the plaintiffs allege that Defendants used tying arrangements, anti-steering and anti-tiering provision requirements, and "gag clauses," in their negotiations with insurance companies, which were aimed at restricting competition and ultimately caused plaintiffs to pay inflated prices for healthcare services.[1] MultiPlan is not a party in either the Federal Court Action or the State Court Action.

---

[1] *See, e.g.*, Federal Court Action, ECF 43, p. 5 ("The Scheme includes, among other anticompetitive features: (1) 'all-or-nothing' tying arrangements **requiring health insurance plans** to contract with all of Mission's (and later HCA's) GAC and Outpatient Services as a bundle, *i.e.*, take everything together or nothing at all; (2) exclusionary requirements in the form of anti-steering and anti-tiering provisions, which **prevent insurance companies** from steering insureds to less expensive and/or higher quality options as a means to promote competition and reduce prices; (3) 'gag' clauses that **prevent insurers** from communicating with employers and patients about the prices they pay for health care and thus determine how best to reduce costs; and (4) other anticompetitive conduct relating to the negotiation of pricing for GAC Services.") (emphasis added).

On July 12, 2024, MultiPlan's counsel sent a memo to Defense counsel detailing why it was not a proper subject of the Defendants' subpoenas. On July 31, 2024, Defense counsel sent a memo to MultiPlan's counsel proposing that MultiPlan respond to 16 of the subpoenas' document requests. Defense counsel and counsel for MultiPlan met and conferred regarding the subpoenas on August 27, 2024, and again on September 18, 2024, after which MultiPlan agreed to produce its template facilities agreement to demonstrate that MultiPlan's agreements do not contain the anticompetitive provisions at issue in this litigation. MultiPlan made that production on September 26, 2024. Despite MultiPlan's efforts to reach an agreement with Defendants, Defendants have continued to insist that MultiPlan undergo the costly and time-consuming process of pulling and reviewing potentially thousands of pages of documents when the information sought is clearly available, and more appropriately obtained, from actual insurers and other healthcare payors.

### III. LAW AND ARGUMENT

#### a. Legal Standard

Courts are cognizant of the distinction between parties and nonparties in considering the protections of Rule 45. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) ("Underlying the protections of Rule 45 is the recognition that the word non-party serves as a constant reminder of the reasons for the

limitations that characterize third-party discovery.") (internal quotation marks and citation omitted); *see also Bank of Am. Corp. v. SR Int'l Bus. Ins. Co.*, No. 05-CVS-5564, 2006 WL 3093174, at *5 (N.C. Super. Nov. 1, 2006) ("[North Carolina] Rule 45 affords greater protection to nonparties than Rule 26 provides to parties. The courts have an obligation to protect nonparties from burden and expense imposed without sufficient justification."). And the general rule is that "[b]ystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).

Discovery must, of course, be "proportional to the needs of the case," and "[p]roportionality requires courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at 188-189 (internal quotation marks and citation omitted). "When discovery is sought from nonparties, however, its scope must be limited even more" as nonparties are "strangers to the litigation, and since they have no dog in the fight, they have a different set of expectations from the parties themselves." *Id.* at 189 (internal quotation marks, brackets, and citation omitted). "A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty subjects a person to undue burden and must be

quashed or modified." *Id.* (internal quotation marks and citation omitted). The ultimate question is whether the benefits of the discovery outweigh the burden on the recipient, and in making that determination, "courts must give the recipient's nonparty status special weight." *Id.* (citation omitted). "Without exhaustively listing the considerations that go into this analysis," the Fourth Circuit has found that, in making this determination, courts should consider the relevance of the information sought, the requesting party's need for it, what information is available from other sources, the "dollars-and-cents costs" of making the document production, invading privacy or confidentiality interests, the interests of others who might be affected by compliance with the subpoena, and the subpoena's overbreadth. *Id.* at 189-190.

**b. MultiPlan is not a proper subject of the subpoenas because MultiPlan is not an insurer and does not pay for healthcare services, it is not a putative class member, and the anticompetitive contract features alleged are not present in MultiPlan's contracts.**

MultiPlan is not an insurance company. MultiPlan operates a non-risk-bearing complementary preferred provider organization ("PPO") network that does business nationwide by contracting, on the one hand, with healthcare providers, which then become participating providers in MultiPlan's complementary PPO network. On the other hand, MultiPlan enters into separate agreements with its clients, which are health insurers, health plans, and other third-party payors that have purchased the right to access MultiPlan's PPO network discounted rates on behalf of their

members. MultiPlan also contracts with clients to provide other healthcare cost-management services, including negotiation services, and reference-based claim pricing services, through which it calculates reimbursement recommendations for out-of-network claims using proprietary databases and methodologies.

MultiPlan is **not** a healthcare payor, nor is it licensed or doing business in any state in the United States as a health insurer, HMO, or TPA. MultiPlan does not assume any of the financial risk associated with the payment of any medical expenses incurred by members of their clients' health plans or programs; MultiPlan does not market, sell, sponsor, insure, issue, or administer health benefit plans or programs to or for any consumers; it does not verify coverage, adjudicate benefits, or pay claims under any health benefit plans or programs; it does do not have insureds, members, or beneficiaries; it does not provide administrative services to or for any individuals, insurers, or employers; and it does not collect or receive any premium payments from "insured" individuals relating to its network arrangements or other healthcare cost-management services.

Both the Federal Court Action and the State Court Action allege anticompetitive behavior on the part of the Defendants which resulted in the plaintiffs having to pay more for healthcare services. Plaintiffs in the Federal Court Action are public entities that operate self-funded health insurance plans. Federal

Court Action, ECF 43, ¶ 2. The Defendants are generally alleged to the be operators of the Mission Health system. The plaintiffs allege that the Defendants engaged in an anticompetitive scheme to reduce competition in the relevant healthcare markets, resulting in the plaintiffs paying inflated prices for healthcare services. *Id.* ¶¶ 1-3; *see also* ¶¶ 206, 213 (alleging plaintiffs and the class were injured by paying "supracompetitive prices"). The plaintiffs seek to represent a class of "similarly situated entities," *i.e.*, "insurers and health plans" that paid for the relevant healthcare services during the relevant time period. *Id.* ¶ 192. Notably, MultiPlan is not similarly situated to the Federal Court Action plaintiffs and would not be a class member, as MultiPlan is not an insurer or health plan, and does not pay for healthcare services.

The plaintiffs in the State Court Action are individuals and a business entity that "had to pay higher amounts" due to the Defendants' alleged anticompetitive behavior. State Court Action, Second Amended Class Action Complaint, ¶¶ 15-20. The plaintiffs seek to represent a class of individuals and entities that "paid some portion of premiums, deductibles, copays or coinsurance for a self-insured or fully-insured product offered or administered" by a number of named entities, one of which is MultiPlan PHCS. *Id.* ¶ 306. Plaintiffs' mention of MultiPlan in their class definition is misplaced. MultiPlan does not offer or administer any self-insured or

fully-insured products. Therefore, there will be no class members that paid amounts "for a self-insured or a fully-insured product offered or administered by . . . MultiPlan PHCS." Defendants note that "MultiPlan is identified in the putative class definition" but fail to explain the alleged relevance of this fact. *See* Defendants' Brief in Support of Motion to Compel ("Defendants' Brief"), p. 5. For the reasons explained herein (*i.e.*, because MultiPlan does not offer or administer any self-insured or fully-insured products), there is no relevance to the mention of MultiPlan in the class definition. Therefore, any support for Defendants' motion purportedly gained by MultiPlan's mention in the class definition is moot.

Not only is MultiPlan not a class member or an entity that offered or administered any products to putative class members, MultiPlan is not a proper subject of the subpoenas for the additional reason that the contracts between MultiPlan and Defendants, and MultiPlan and its clients, as it pertains to the Mission Hospital System, do not contain any of the anticompetitive features alleged by plaintiffs. More specifically, the plaintiffs allege that Defendants' scheme involved tying arrangements, anti-steering and anti-tiering provision requirements, and "gag clauses." *See, e.g.*, *id.* ¶ 140; ECF 43 ¶ 12. These features pertaining to the Mission Hospital system are not present in MultiPlan's contracts.[2] Thus, contrary to

---

[2] Notably, Defendants' counsel agreed that the template agreement produced by MultiPlan did not contain the key contract provisions at issue in this litigation.

Defendants' assertion, any documents produced by MultiPlan will not bear on "one of the most important issues in the Underlying Litigation"—"whether Defendants utilize their purported anticompetitive 'Scheme' to 'coercively rob health plans of the ability to choose which . . . providers are in or out of network,'" Defendants' Brief, p. 16—both because the anticompetitive features forming the basis of the "scheme" are not present in MultiPlan's contracts, and because MultiPlan is not a "health plan" and does not offer "health plans." Regardless, and as discussed more below, Defendants have wholly failed to explain why this information couldn't be gathered from other, more appropriate targets, such as insurers, TPAs, or other healthcare payors (*i.e.*, entities that actually offer *health plans*).

### c. MultiPlan should not be required to respond to the subpoenas when there are obvious and more logical targets.

The "ultimate question" when conducting the proportionality analysis "is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). And as a non-party to both the State Court and Federal Court Actions, MultiPlan is afforded heightened protection. *See id.* ("[C]ourts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally.") (internal quotation marks omitted). In considering the benefit and burden, courts should consider the requesting party's

- 10 -
Case 1:24-mc-00033-UA-JEP Document 7 Filed 01/09/25 Page 10 of 19

need for the information, as well as whether the information sought is available from other sources. *Id.* "To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation — **or, in appropriate cases, from other third parties that would be more logical targets for the subpoena**." *Id.* (emphasis added). Here, Defendants can obtain all of the information sought from more appropriate targets, such as insurers, TPAs, and healthcare payors and, in fact, court filings indicate that the parties are already seeking information from those targets. *See, e.g.*, Federal Court Action, ECF 113, p. 10 (noting that Defendants served subpoenas on "14 commercial insurance companies" and plaintiffs served subpoenas on "more than 20 commercial insurers").[3]

---

[3] That Defendants' subpoenas were aimed at such entities is clear. For example, Defendants' subpoenas sought information regarding "premiums charged by You to Subscribers or Members" (Request No. 8); "communications relating to how You set premiums for commercial health plans offered in North Carolina" (Request No. 13); documents "sufficient to show Your enrollment, average premium (per member per month)" and "medical-loss ratio" (Request No. 18); "documents and communications relating to Your competition with other commercial health plans for plan sponsors" (Request No. 21); "communications pertaining to . . . how You compete with other Payers" (Request No. 22); data on premium payments (Request No. 25); and data regarding "payments from You" (Request No. 29). MultiPlan does not have members or subscribers, does not set or collect premiums or co-pays, and therefore would not have information responsive to any of these requests. MultiPlan interprets Defendants' "Selected Documents Requests" as an acknowledgment that the aforementioned requests were blatantly misdirected.

Defendants offer only two justifications for why the Selected Document Requests are allegedly needed from MultiPlan, and both make clear that the same or comparable information is available from other sources. First, Defendants claim that "information about MultiPlan's negotiations with providers (*see* Document Request Nos. 5, 9, 11) would prove beneficial" to litigating whether Defendants utilized an anticompetitive "scheme" to "coercively rob health plans of the ability to choose which . . . provider are in or out of network." Defendants' Brief, p. 16. As explained above, the anticompetitive features forming the basis of the alleged "scheme" are not present in MultiPlan's contracts. Further, MultiPlan is not a "health plan" and does not offer "health plans." This information is clearly more appropriately directed to entities offering or administering health plans and, at the very least, "comparable information that would [] satisfy [Defendants'] needs," is available from those sources.

Second, Defendants claim that "[i]mplicit in MultiPlan's inclusion and exclusion of certain providers in its custom provider networks is a knowledge of the quality of care and substitutability of various providers in the Relevant Region" and therefore "information responsive to Request Nos. 2-4, 6-8, and 15-16 is important to defining the relevant markets and the substitutability of providers therein." Defendants' Brief, p. 17. Defendants' own citations in their Brief confirm this

information is available (and again, more appropriately sought) from insurers. On page 17, they include the following citation:

> *Fed. Trade Comm'n v. Penn State Hershey*, 838 F.3d 327, 342 (3d Cir. 2016) (because **insurers** "are the ones who negotiate directly with the hospitals," market definition must be analyzed "through the lens of the **insurers**").

(emphasis added).

In sum, it could not be clearer that Defendants can obtain the information sought from actual insurance companies, and Defendants have offered no reasonable explanation as to why MultiPlan, rather that other, more logical targets, should be forced to respond to their overburdensome subpoenas.[4] Defendants' motion to compel should be denied.

### d. Forcing MultiPlan to respond to Defendants' subpoenas would create an undue burden.

In addition to the availability of comparable information from other sources, courts evaluating nonparty discovery should consider "overbreadth and confidentiality concerns" as well as "the expense of collecting, reviewing, and

---

[4] Defendants argue in their Brief that based on their understanding of MultiPlan's business, MultiPlan may possess information responsive to their subpoenas. *See* Defendants' Brief, pp. 19-22. But again, whether MultiPlan may possess responsive information is not the test. Rather, Defendants, as the requesting party, "should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation — or, in appropriate cases, from other third parties that would be more logical targets for the subpoena." *Jordan*, 921 F.3d at 189. Defendants have not and cannot make such a showing under these circumstances.

producing documents." *Jordan*, 921 F.3d at 192. The subpoenas here seek voluminous amounts of information—much of which MultiPlan considers confidential—over a time period spanning more than 8 years,[5] such that responding to the subpoenas would put an undue burden on MultiPlan.

In *Jordan*, the Fourth Circuit acknowledged that "a subpoena may impose a burden by invading privacy or confidentiality interests," and that in evaluating this burden, courts can consider both "the interests of the recipient of the subpoena, as well as others who might be affected." *Id.* at 190. "For example, if a subpoena seeks information from a business about its customers, it may implicate the business's interest in protecting competitively sensitive information, as well as the customers' interest in protecting their privacy[.]" *Id.*; *see also Richards v. Octane Enviromental, LLC*, No. 1:18-CV-00157, 2020 WL 13111139, at *2 (N.D.W. Va. Mar. 12, 2020) ("Not only must information sought in discovery be 'relevant to any party's claim or defense' and 'proportional to the needs of the case,' . . . but in the case of confidential commercial information, movants must also show a 'substantial need' for the information that 'cannot otherwise be met without undue hardship.'" (quoting *Jordan*, 921 F.2d at 188, and Fed. R. Civ. Proc. 45(d)(3)(B)(i), 45(d)(3)(C))).

---

[5] Defendants' subpoenas seek information from January 1, 2016 through the date of receipt.

Here, Defendants seek multiple categories of information which MultiPlan considers and maintains as confidential. For example, Defendants' subpoena seeks *all* of MultiPlan's contracts with "any provider of inpatient and/or outpatient services in the Relevant Region" (Request No. 2), as well as all contracts between MultiPlan and the top ten providers of inpatient and outpatient services in North Carolina "outside the Relevant Region" (Request Nos. 3 and 4). It also seeks *all* documents and communications concerning how MultiPlan forms provider networks in North Carolina (Request No. 15). MultiPlan considers the individually-negotiated terms of its provider contracts, as well as internal documents regarding formation of its provider networks, to be confidential, and MultiPlan, as a matter of practice, obtains permission from providers before disclosing the terms and contents of a provider's agreement. Thus, both MultiPlan and its clients' confidentiality interests would be adversely affected by Defendants' subpoena requests.

The practical burdens of responding to Defendants' overbroad subpoena warrant denial of Defendants' motion as well. In order to undertake responding to Defendants' subpoenas, MultiPlan would be required to identify, locate, and pull 12 categories of documents, then review them for responsiveness and privilege, and then prepare them for production. Performing these tasks will require the time and attention of multiple individuals (with other job duties and responsibilities) working

numerous hours over multiple days (likely weeks) to complete. Considering the incredible overbreadth of Defendants' requests,[6] it is difficult to forecast the exact cost of this endeavor, even assuming it could be completed without further Court-ordered narrowing.[7] Defendants' motion should be denied. However, and in the alternative, to the extent the Court is inclined to order MultiPlan to respond to Defendants' subpoenas, Defendants should be required to bear the cost and expense of same. *See, e.g.*, *Stafford v. Bojangles Restaurants, Inc.*, No. 3:20-CV-266-MOC,

---

[6] Notably, Defendants' requests include (but are not limited to): "**all contracts and related attachments**" between MultiPlan and an unidentified number of providers in the Relevant Region (Request No. 2); "**all documents and communications**" relating to the formation of any product or network offered (or previously offered) by MultiPlan in North Carolina (Request No. 6); "**all documents and communications**" "relating to or assessing competition or substitutability between HCA NC, Mission, and any other provider of inpatient and/or outpatient services in the Relevant Region" (Request No. 7); "**all documents and communications**" in which MultiPlan discusses Mission or HCA NC (Request No. 8); "**all documents and communications**" relating to MultiPlan's strategy and rationale for contract negotiations with HCA NC, Mission, and any other provider of inpatient and/or outpatient services in the Relevant Region (request 9); "**all documents and communications**" relating to MultiPlan's negotiation or attempt to negotiate "any agreement, rates, or terms of participation for inpatient services separately from outpatient services with any provider of inpatient and/or outpatient services in the Relevant Region" (Request No. 11); "**all documents and communications**" relating to how MultiPlan forms provider networks in North Carolina (Request No. 15); and "**all documents and communications**" relating to MultiPlan's "view on fair, reasonable, or customary reimbursement rates for hospitals, physician groups, and outpatient facilities, including [MultiPlan's] methodology for determining these rates and any price lists or formulas used by" MultiPlan (Request No. 16) (emphasis added).

[7] Defendants appear to complain that MultiPlan has not yet identified the "actual cost" of compliance, but it is impossible to know the exact cost of compliance until the process is complete. *See* Defendants' Brief, p. 19.

2023 WL 3971698 (W.D.N.C. June 9, 2023) (shifting costs of subpoena); *see also* Fed. R. Civ. P. 45(d)(1) (noting a party's obligation to "avoid imposing undue burden or expense on a person subject to the subpoena"); *Snoznik v. Jeld-Wen, Inc.*, 259 F.R.D. 217, 223 (W.D.N.C. 2009) (granting motion for protective order) ("The direction to a court when a nonparty is asserting confidentiality, is that the court is first to attempt to alleviate undue hardship through the assessment of cost or the issuance of a Protective Order.").

## IV. CONCLUSION

For the foregoing reasons, MultiPlan respectfully requests that the Court deny Defendants' Motion to Compel and enter an order relieving MultiPlan from any obligations in connection with same. Alternatively, MultiPlan requests that the Court order the Defendants issuing the subpoenas to pay all costs and fees incurred by MultiPlan in responding to the subpoenas.

DATED this 9th day of January, 2025.

<pre>
                              /s/ Brittany H. Alexander
                              Errol J. King, Jr. (pro hac vice
                              forthcoming)
                              Taylor J. Crousillac (pro hac vice
                              forthcoming)
                              Brittany H. Alexander (NC Bar
                              No. 58512)
                              PHELPS DUNBAR LLP
                              II City Plaza
                              400 Convention Street, Suite 1100
                              Baton Rouge, Louisiana 70802
                              Telephone:  (225) 376-0207
                              Errol.King@phelps.com
                              Brittany.Alexander@phelps.com
                              Taylor.Crousillac@phelps.com

                              Attorneys for nonparty MultiPlan,
                              Inc.
</pre>

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.3(d)(1), I hereby certify that this brief contains fewer than 6,250 words as reported by the word processing software.

This 9th day of January, 2025

<pre>
                                      /s/ Brittany Alexander
</pre>

## CERTIFICATE OF SERVICE

I hereby certify that on this day the foregoing was electronically filed using the Court's CM/ECF system which will electronically and automatically serve all counsel of record in this matter.

This 9th day of January, 2025

<span style="margin-left: 50%">*/s/ Brittany Alexander*</span>